**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**REBECCA L. F.,**

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-1447**
**Judge James L. Graham**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Rebecca L. W. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

## I. BACKGROUND

Plaintiff protectively filed her DIB application in September 2017 and alleged that she became disabled beginning May 22, 2015. (R. at 15, 242–48.) Plaintiff's application was denied initially and upon reconsideration. (*Id*. at 68, 84.) Administrative Law Judge "ALJ" Julianne Hostovich then held two hearings before issuing an unfavorable determination in July 2020. (*Id*.

at 46–67, 35–45, 974–96.) Plaintiff subsequently sought judicial review in this Court where the parties successfully moved for a joint remand. (*Id*. at 1003–08.)

Upon remand, ALJ Julianne Hostovitch held a third hearing before she issued a second unfavorable determination in March 2024. (*Id*. at 953–73, 921–52.) Plaintiff again sought judicial review in this Court where the parties successfully moved for a joint remand a second time. (*Id*. at 1627–31.)

After that second remand, ALJ Francine Serafin ("ALJ Serafin") held a fourth hearing in July 2025 before issuing a third unfavorable determination on August 26, 2025. (*Id*. at 1579–94, 1546–78.) Plaintiff seeks judicial review of that third unfavorable determination. She contends that ALJ Serafin reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 7–11, ECF No. 10.) The undersigned agrees.

## II. ALJ SERAFIN'S DECISION

ALJ Serafin issued the unfavorable determination on August 26, 2025. (R. at 1546–78.) ALJ Serafin initially determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. (*Id*. at 1552.) At step one of the sequential evaluation

process,[1] ALJ Serafin determined that Plaintiff had not engaged in substantial gainful activity during the period that spanned her alleged onset date of May 22, 2015, through her date last insured. (*Id.*) At step two, ALJ Serafin found that Plaintiff had the following severe medically determinable impairments through her date last insured: degenerative disc disease (DDD) of the cervical spine; carpal tunnel syndrome (CTS); osteoarthritis (OA) of the left shoulder with rotator cuff tendinosis; OA of the left knee; internal derangement of the right knee; left ulnar neuropathy; major depressive disorder (MDD); bipolar disorder; generalized anxiety disorder (GAD); and post-traumatic stress disorder (PTSD). (*Id.*) At step three, ALJ Serafin found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 1553.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ Serafin then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) except she could frequently climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant could frequently balance, stoop, kneel, and crouch, but only occasionally crawl. She was capable of occasionally reaching overhead with the bilateral upper extremities (BUE). She was capable of frequently fingering, handling, and feeling with the BUE. She was capable of tolerating frequent exposure to atmospheric conditions as that term is defined in the Selected Characteristics of Occupations (SCO). The claimant was capable of tolerating occasional interaction with supervisors, coworkers, or the general public. She was capable of performing simple work tasks that were not at an assembly line or production rate pace, or that involved any strict production quotas (SPQ). She was capable of managing occasional changes in the work routine or work setting.

(*Id*. at 1557–58.)

At step four, ALJ Serafin determined that Plaintiff had no past relevant work. (*Id*. at 1565.) ALJ Serafin then relied on the VE's testimony at step five to determine that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of cleaner, non-government mail clerk, and routing clerk. (*Id*. at 1565–66.) Accordingly, ALJ Serafin determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 1567.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c).

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that ALJ Serafin committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 7–11, ECF No. 10.) The undersigned agrees.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and

[3] Because Plaintiff's application was filed in September 2017, it is subject to regulations governing applications filed on or after March 27, 2017.

nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On November 17, 2017, Karla Delcour, Ph.D. reviewed Plaintiff's file at the initial level. (R. at 75–76, 79–81.) Dr. Delcour found, in relevant part, that Plaintiff had moderate limitations in her ability to interact with others. (*Id*. at 75, 80.) She further found that because of that limitation, Plaintiff could "work superficially with co-workers, supervisors, and public." (*Id*. at 80.)

At the reconsideration level, Irma Johnston, Psy.D., reviewed Plaintiff's file on March 2, 2018. (*Id*. at 90–91, 95–97.) Dr. Johnston also found, in relevant part, that Plaintiff had moderate limits in her ability to interact with others. (*Id*. at 90, 96.) Like Dr. Delcour, Dr. Johnston further found that as a result of that limitation, Plaintiff could "work superficially with co-workers, supervisors, and public." (*Id*. at 96.)

**C. ALJ Serafin's Evaluation of the Reviewers' Findings**

ALJ Serafin began by summarizing all of Dr. Delcour's findings, writing as follows:

> At the initial level of review, Karla Delcour, Ph.D., the State agency psychological consultant, opined the claimant had severe mental health MDI of anxiety disorder and depression. In terms of the "B criteria", Dr. Delcour opined the following limitations: a mild limitation in understanding, remembering, and applying information; *a moderate limitation in interacting with others*; a moderate limitation in concentrating, persisting, and maintaining pace; and a mild limitation in adapting and/or managing oneself. As for RFC, Dr. Delcour opined the claimant could carry out simple instructions; *could work superficially with coworkers, supervisors, and the public*; and could work in a setting with few changes (Ex 2A).

(*Id*. at 1562 (emphasis added).)

ALJ Serafin then determined that Dr. Delcour's findings were not persuasive. She explained that determination as follows:

> Dr. Delcour supported her opinion with the mental health evidence available at the time of her review. However, the undersigned does not find Dr. Delcour's opinion persuasive because it is inconsistent with the mental health evidence available through the DLI. Firstly, the undersigned notes that Dr. Delcour failed to find PTSD as a mental health MDI despite it being diagnosed in the record by Dr. Abromowitz and the claimant being prescribed Prazocin for it (Ex 18F, p. 20). In addition, the undersigned notes that a moderate limitation is supported the "B criteria" functional area of adapting and/or managing oneself. For example, the claimant at times during the relevant period presented with an anxious and depressed mood (Ex 4F, p. 2). Moreover, during the PCE, the claimant was tearful, visibly shaking her legs, fidgeting with her hands, displayed a restricted affect, and was both anxious and depressed (Ex 2F). *Finally, the undersigned notes that the use of term "superficial" relating to interacting with others is not vocationally relevant*.

(*Id*. (emphasis added).)

ALJ Serafin next summarized Dr. Johnston's findings, writing as follows:

> At the reconsideration level of review, State agency psychological consultant, Irma Johnston, Psy.D., opined the claimant had severe mental health MDI of anxiety and depression. In terms of the "B criteria", Dr. Johnston opined the following limitations: a mild limitation in understanding, remembering, and applying information; *a moderate limitation in interacting with others*; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting and/or managing oneself. In terms of the RFC, Dr. Johnston opined the claimant could carry out simple instructions for one to three step tasks, in a setting where there was no demand for fast pace; *could work superficially with coworkers, supervisors, and the public*; and could work in a setting with few changes

(*Id*. at 1562–63 (emphasis added).)

ALJ Serafin then determined that some of Dr. Johnston's findings were persuasive while others were not. (*Id*. at 1563.) ALJ Serafin also explained that determination:

> Dr. Johnston supported her opinion with the mental health evidence available at the time of her review. As noted above when evaluating Dr. Delcour's opinion, PTSD is an MDI, which neither consultant acknowledged nor found medically-determinable (Ex 18F, p. 20). *Dr. Johnston also used the term "superficial" in regard to working around others and as noted above, this is not vocationally relevant language.* However, the remainder of Dr. Johnston's opinion is persuasive, as it is consistent with the MER. For instance, the "B criteria" findings are supported by the claimant's PCE, MSE findings, and treatment notes. Particularly, she has been observed with an intact memory, reported anxiety in public places, been positive for decreased concentration, and displayed an anxious/depressed mood (Ex 10F, pp. 8-9; 4F, p. 1; 2F). Furthermore, as identified by the AC, the

> undersigned has provided a limitation of simple work that is not at an assembly line or production rate pace, or that involve any strict production quotas to account for the claimant's moderate limitation in concentration, persistence, and maintaining pace, and to accommodate the one to three step instruction limitation assessed by Dr. Johnston in her RFC (Ex 4A).

(*Id*. (emphasis added).)

As this discussion demonstrates, ALJ Serafin rejected, in relevant part, Drs. Delcour's and Johnston's finding that Plaintiff was limited to superficial interactions with coworkers, supervisors, and the public. (*Id*. at 1562–63.) Specifically, ALJ Serafin explained that she discredited this finding because the term "superficial" was purportedly "not vocationally relevant." (*Id*.) Plaintiff challenges that reason for discounting the reviewers' social interaction findings. (Pl.'s Statement of Errors 7–11, ECF No. 10.) The undersigned agrees that this explanation was inadequate.

Although ALJ Serafin stated that "superficial" lacks a vocational definition, the Sixth Circuit Court of Appeals has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at 4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.,* No. 3:20-cv-410, 2021 WL 4905438, at 5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert."), *report and recommendation adopted*, 2021 WL 5235326 (S.D. Ohio Nov. 10, 2021) (Rice, J.)).

Many District Courts sitting in the Sixth Circuit have also held that a limit to superficial interactions is understood as a limit regarding the quality of a plaintiff's workplace interactions. *See, e.g.*, *Deana L. F. v. Comm'r of Soc. Sec.*, No. 2:25-CV-1121, 2026 WL 1587259, at *2 (S.D. Ohio June 3, 2026) (Watson, J.) ("The Undersigned agrees with those judges who have

concluded that, at least with respect to the term 'superficial,' it is capable of being understood and translated into vocational limitations."); *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-CV-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021) (Watson, J.) (explaining that a "'superficial' interaction is a well-defined limitation in the Social Security context"); *Hummel v. Comm'r of Soc. Sec.*, No. 2:18-CV-00028, 2020 WL 13572215, at *4 (S.D. Ohio Mar. 13, 2020) (Graham, J.) ("Stated simply, 'superficial interaction' is a well-recognized, work-related limitation."); *Dawn V. v. Comm'r of Soc Sec.*, No. 1:25-CV-00570, 2026 WL 2874064, at *5 (S.D. Ohio Sept. 24, 2026) (Gentry, M.J.) ("[T]his Court has repeatedly held that superficial interaction is a well-recognized, work-related limitation.'") (internal quotations omitted); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vacura, M.J.) (explaining that "'superficial interaction' is a well-recognized, work-related limitation"), *report and recommendation adopted sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, J.); *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) (Silvain, M.J.) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation."); *William H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00219, 2022 WL 4591304, at *4 (S.D. Ohio Sept. 30, 2022) (Gentry, M.J.) (same); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (Vascura, M.J.) (same); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (Litkovitz, M.J.) (S.D. Ohio Feb. 6, 2023) (same), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023) (Morrison, J.).

As a result, some District Courts have found reversible error when an ALJ discounts an opined superficial interaction limit only because it is purportedly vague or "not vocationally

relevant." *See, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *4–5 (S.D. Ohio Apr. 12, 2021) (Deavers, M.J.), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021) (Graham, J.). Likewise, District Courts have found reversible error where an ALJ credits a medical opinion or prior administrative finding that includes a superficial interaction limit but then omits that limit or substitutes another limit for it without adequately explaining why. *See, e.g*., *Sue A. M. v. Comm'r of Soc. Sec*., No. 3:22-CV-171, 2022 WL 14346260, at *3–4 (S.D. Ohio Oct. 25, 2022) (Vascura, M.J.), *report and recommendation adopted sub nom., Sue A. M. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022) (Newman, J.); *Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *5 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, J.).

These principles do not, however, establish reversible error in all cases. For instance, there is no reversible error when an ALJ discredits a superficial interaction for legitimate record-based reasons in addition to its purported vagueness. *See, e.g., Deana L. F.*, 2026 WL 1587259, at *3 (Watson, J.) (finding no reversible error where ALJ discounted a superficial interaction limit because it was not vocationally defined; ALJ also discounted it because the record evidence showed a "greater capacity for interaction" and substantial evidence supported that alternative determination); *Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (Vascura, M.J.) (finding no reversible error where ALJ discounted a superficial interaction limit for vagueness; ALJ also discounted it because it was inconsistent with treatment records describing plaintiff as pleasant and cooperative).

Similarly, there is no reversible error when an ALJ discounts a superficial limit because it is purportedly vague but nevertheless includes limits in an RFC that adequately captures the

qualitative nature of a superficial interaction. *See, e.g.*, *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (Deavers, M.J.) (finding no reversible error where ALJ declined to incorporate an opined superficial interaction because it was "not vocationally relevant;" ALJ included a "no tandem task" limit that adequately addressed it), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (Graham, J.). *See also Aalijah v. Comm'r of Soc. Sec.*, No. 2:23-CV-1955, 2024 WL 2315290, at *2 (S.D. Ohio May 22, 2024) (Watson, J.) (finding that a limit to no tandem or team tasks adequately accommodated a superficial interaction limit).

Finally, the Sixth Circuit has clarified that because superficial is not defined by regulation or agency guidelines, when an opining source does not define a superficial interaction limit, an ALJ may define that limit provided the ALJ's definition reasonably captures the qualitative nature of the restriction. *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) (finding ALJ did not err where he "delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context").

Given these principles, the undersigned concludes that ALJ Serafin reversibly erred. The reviewers found that Plaintiff was limited to superficial work with others. (R. at 80, 96.) ALJ Serafin discounted that finding solely because the term "superficial" purportedly lacked vocational definition. (*Id*. at 1562–63.) But the lack of a formal vocational definition does not deprive the term of any ascertainable meaning. As explained, this Court has determined that "superficial" can be readily understood in the Social Security context. *See Deana L. F.*, 2026 WL 1587259, at *2; *Swank*, 2021 WL 1345420, at *4–5; *Dawn V.*, 2026 WL 2874064, at *6. A definition or standard established by judicial precedent is no less authoritative simply because it

appears in a judicial opinion rather than a regulation. Indeed, Courts have long supplied authoritative standards in Social Security adjudication. The treating-physician rule, for example, originated in judicial decisions before the Commissioner adopted regulations formalizing it. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).

The absence of a formal vocational definition therefore does not, standing alone, adequately explain the rejection of the reviewers' limit on superficial contact. If an ALJ finds a term insufficiently precise, he or she can explain its meaning and translate it into concrete vocational restrictions. *See, e.g.*, *Mabry-Schlicher*, 2025 WL 1604376, at *5 (finding no error where an ALJ translated the agency experts' superficial-contact limit into specific social restrictions that captured their qualitative essence). But the discretion to translate a limitation is not a license to discard its substance. Characterizing a medical source's term as "nonstandard" or "not vocationally relevant" does not substitute for evaluating the supportability, consistency, and functional significance of the limit that the term describes. Otherwise, an ALJ could sidestep a medical expert's assessment by simply objecting to the expert's word choice. That approach elevates a medical source's vocabulary over the substance of an assessed restriction.

Defendant nevertheless suggests that ALJ Serafin accounted for the reviewers' superficial-interaction limit by including in Plaintiff's RFC a limit to occasional interactions. (Def.'s Mem. in Opp'n 5–6, ECF No. 8.) Numerous District Court have held, however, that an occasional interaction limit does not account for a superficial interaction limit. *See, e.g.*, *Spinner,* 2021 WL 7908552, at *2 (explaining that a superficial interaction has a clear meaning that occasional does not capture) (cleaned up); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00324, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) (King, M.J.) (explaining that "occasional," which refers to the frequency of the interaction, is not equivalent to "superficial," which refers to

the quality of the interaction). That is because a superficial limit refers to the quality of interactions while an occasional limit refers to how often interactions occur.

Indeed, in a factually similar case, Judge Graham remanded a matter where an ALJ substituted an occasional-interaction limit for a superficial-interaction limit solely because the term "superficial" purportedly lacked a vocational definition. *Hummel*, 2020 WL 13572215, at *4. Judge Graham explained as follows:

> Courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to "superficial" interaction. *See*, *e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)); *Barker v. Astrue*, No. 5:09-cv-1171, 2010 WL 2710520, at *5–6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred in failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that [p]laintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited [p]laintiff to no more than *occasional* interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent [p]laintiff can interact with co-workers and supervisors (whereas ALJ Hafer found that [p]laintiff was limited to superficial contact with such individuals)."). Stated simply, "superficial interaction" is a well-recognized, work-related limitation. The ALJ's contention that such a limitation, as reflected in the State agency consultant's opinion is "not stated in vocationally relevant terms" is therefore untenable. Because the ALJ's explanation is lacking in this regard, remand is necessary. *See Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-cv-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-cv-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

*Hummel*, 2020 WL 13572215, at *4.

This occasional and superficial distinction is rooted in the realities of work. An employee who works independently for most of the day may be required to occasionally resolve a disagreement about responsibility for a task; persuade someone to try a different technique; handle a complaint; or participate in a discussion that requires negotiations and compromise instead of the mere exchange of information. Such communications could take place only occasionally yet still involve more than surface-level exchanges of information. They stand in stark contrast to, for example, asking where supplies or equipment are located; informing a colleague that a task is complete; or notifying a supervisor that a machine has stopped working.

To be clear, the undersigned does not suggest that ALJ Serafin was required to adopt the reviewers' superficial-contact limit. ALJ Serafin was, however, required to explain the conflict between that limit and the ultimate RFC determination. SSR 96-8p expressly provides: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). Such a conflict exists when a source identifies a particular functional limitation, but the RFC neither includes that limitation nor otherwise accounts for it. In that circumstance, the discrepancy is substantive: the opinion includes a limit on a claimant's ability to perform a work-related activity, while the RFC does not. *See, e.g., Allyson F. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-3166, 2024 WL 4035015, at *3 (S.D. Ohio Sept. 4, 2024) (Marbley, J.) (explaining that "the inconsistency" requiring explanation "is between a credited medical source's opinion to limit a claimant to superficial interactions and the absence of any RFC limitations to that effect"). That is the discrepancy requiring adequate explanation here.

ALJ Serafin's explanation that "superficial" is not vocationally defined did not adequately describe whether the reviewers' superficial-contact limit was supported by or consistent with the record evidence. Without an adequate explanation, the Court cannot meaningfully review whether substantial evidence supports the decision to omit that limit from Plaintiff's RFC. And because the occasional-interaction limit only restricted the frequency of Plaintiff's interactions, but not their quality, the RFC did not otherwise account for the superficial-contact limit. On this record, the undersigned cannot conclude that the inadequately explained omission of the reviewers' superficial-interaction limit was harmless.

## V. RECOMMENDED DISPOSITION

Accordingly, the undersigned concludes that the ALJ reversibly erred by rejecting the reviewers' brief-interaction limit solely because that term purportedly lacked a vocational definition, and without otherwise accommodating that limit. It is, therefore, **RECOMMENDED** that the Court **OVERRULE** the Commissioner's non-disability determination and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive

further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE